UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NOE DELGADO

Plaintiff,

v.

**REPORT AND RECOMMENDATION**
**09-CV-01084 (GTS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

Defendant,

## I. Introduction

In June 2008, Plaintiff Noe Delgado filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges he has been unable to work since February 1, 2007, due to post-traumatic stress disorder (PTSD), major depressive disorder, an ankle impairment, and a back impairment. The Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through his attorney, Mr. Peter Walton, commenced this action on September 24, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 2, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for DIB on June 9, 2008, alleging disability beginning on February 1, 2007 (R. at

123-25).[1] Plaintiff alleged disability due to impairments resulting largely from his service in the United States Army: PTSD, major depressive disorder, an ankle impairment, and a back impairment. The application was denied (R. at 54-57). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 61). A video hearing was held between Syracuse, New York, and Watertown, New York, on January 28, 2009, before ALJ Marie Greener (R. at 18-52). Plaintiff, represented by counsel, appeared and testified (R. at 21-51). On February 13, 2009, ALJ Greener issued a decision finding Plaintiff not disabled (R. at 11-17). Plaintiff filed a request for review of that decision (R. at 7). The ALJ's decision became the Commissioner's final decision on July 31, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 1-4).

Plaintiff, through counsel, timely commenced this action on September 24, 2009. (Docket No. 1). The Commissioner interposed an Answer on January 5, 2010. (Docket No. 7). Plaintiff filed a supporting Brief on February 9, 2010. (Docket No. 9). The Commissioner filed a Brief in opposition on April 26, 2010. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

## III. Discussion

[1] Citations to "R" refer to the Administrative Transcript. (Docket Nos. 6, 8).
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

**A. Legal Standard and Scope of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

---

[3]The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is recommended that the matter be remanded for failure to properly evaluate Plaintiff's credibility.

## B. Analysis

### 1. The Commissioner's Decision

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: the ALJ first found that Plaintiff met the insured status requirements of the Act through December 31, 2012, and had not engaged in substantial gainful activity as of his alleged onset date, February 1, 2007 (R. at 13). At step two, the ALJ found Plaintiff's "degenerative changes of the lumbar spine, arthritis of the right ankle, posttraumatic stress disorder, major depression, and a history of alcohol abuse" to be severe impairments. Id. The ALJ then determined that Plaintiff's impairments did not either meet or medically equal a Listed impairment (R. at 14). Next, the ALJ found that Plaintiff

> ha[d] the residual functional capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; push and/or pull 20 pounds occasionally and ten pounds frequently; and climb ladders, ropes, or scaffolds occasionally. The

> claimant also ha[d] the residual functional capacity to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.

Id. Plaintiff's subjective complaints were found to be "not fully credible" (R. at 16). The ALJ found that plaintiff was a younger individual with a high school education, and was able to communicate in English. Id. Based on Medical-Vocational Rule 202.21,[4] the ALJ found that there were a significant number of positions in the national economy that Plaintiff could perform (R. at 16-17). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 17).

**2. Plaintiff's Claims:**

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating Plaintiff's credibility; b) the ALJ erred in weighing the opinions from Plaintiff's treating sources; and c) the ALJ erred at various other points throughout the sequential evaluation. The Court will discuss each argument in turn:

**a) The ALJ Failed to Properly Evaluate Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate his credibility. Plaintiff's Brief, pp. 21-23.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to

[4] Medical-Vocational Guideline Rule 202.21 directs a finding of not disabled when a claimant is capable of performing light work, a younger individual, a high school graduate or more, and has skilled or semiskilled past work, but those skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.21.

accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) [hereinafter SSR 96-7p]. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. SSR. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the Regulations.[5] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ found that Plaintiff's "subjective complaints [we]re not fully credible" (R. at 16). However, in doing so, the ALJ failed to complete the required two-step credibility

[5] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

finding. This error necessitates remand. See Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding, in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)); Cryslerv. Astrue, 563 F.Supp.2d 418, 442 (N.D.N.Y. 2008) (quoting 20 C.F.R. §§ 404.1529(a), 416.929(a)) (finding the ALJ's credibility analysis flawed in part because "the ALJ failed to state in his decision whether plaintiff's medical impairments 'could reasonably be expected to produce the pain or other symptoms alleged'").

Furthermore, Plaintiff was born in July 1978, and has spent nearly his entirely adult life working, including ten years of service in the United States Army (R. at 53, 24-25, 131-37). Plaintiff's good work history should have bolstered his credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). The ALJ made no mention of Plaintiff's good work history when evaluating his credibility.

Therefore, the Court recommends remand to allow the ALJ an opportunity to properly evaluate Plaintiff's credibility.

**b) The ALJ Must Necessarily Reevaluate the Opinions from Plaintiff's Treating Sources**

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the joint opinion from his therapist, Mr. Wojciech Konopka, and psychiatrist, Dr. Brian Babiak. Plaintiff's Brief, pp. 14-17.

In October 2008,[6] Mr. Konopka and Dr. Babiak completed an assessment of Plaintiff's ability to work despite his mental impairments (R. at 389-90). Mr. Konopka and Dr. Babiak opined that Plaintiff's mental functioning ranged from marked to extreme in all the areas the questionnaire assessed. Id. As discussed more fully below, these opinions were afforded "little weight" (R. at 15).

Plaintiff argues that the ALJ erred in failing to afford controlling weight to those opinions. Plaintiff's Brief, pp. 14-17. However, it is not clear to the Court that the assessment had any claim to controlling weight. Only the opinions from treating "acceptable medical sources" may be entitled controlling weight. See Social Security Ruling 06-03p, at *2 (S.S.A.) ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."). Despite Plaintiff's depiction of Mr. Konopka as a physician, he is instead a social worker, and therefore not an "acceptable medical source." 20 C.F.R. § 404.1513(a) (defining an acceptable medical source as licensed physicians and psychologists as well as licensed optometrists, podiatrists, and speech-language pathologists, but only to establish specific impairments). Thus, any opinions rendered by Mr. Konopka would not be entitled to controlling weight. Nevertheless, while opinions from social workers are not considered "acceptable medical sources," such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his

[6] Mr. Konopka signed the assessment on October 7, 2008, and Dr. Babiak signed the opinion one week later, on October 14, 2008 (R. at 390).

familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source"); Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009) ("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician.").

As a psychiatrist, Dr. Babiak is an "acceptable medical source," but at the time the assessment was completed, it is questionable whether he had a treating relationship with Plaintiff. The record documents only two visits with Dr. Babiak, and one occurred after the completion of the assessment (R. at 402-07, 408-09). It is therefore unlikely that Dr. Babiak had the ongoing relationship with Plaintiff necessary to render him a "treating source." 20 C.F.R. 404.1502 ("Generally, [the ALJ] will consider that [the claimant had] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant saw], or ha[d] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."). Thus, the record does not support Plaintiff's contention that the opinions from Mr. Konopka and Dr. Babiak were entitled to controlling weight.

However, even though the medical opinion was not entitled to controlling weight, the ALJ remained obligated to properly weigh and assign weight to the assessment, which she did not do. 20 C.F.R. § 404.1527(d) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he] receive[d]."). ALJs are instructed to consider the following factors when weighing a medical opinion: (1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant; (3) the supporting evidence submitted by the source; (4) the consistency of the opinion with the record; (5) whether the source is a specialist; and (6) any other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(1)-(6). The Court has recommended remand for failure to properly evaluate Plaintiff's credibility. Supra Part III.B.2.a.   A proper evaluation of Plaintiff's credibility will necessarily be impacted by the ALJ's analysis of the opinions from Mr. Konopka and Dr. Babiak. However, the Court notes the following:

The ALJ afforded "little weight" to the opinion, in part, because Plaintiff "was first seen by this treatment team [of Mr. Konopka and Dr. Babiak] in September 2008 (after not attending mental health treatment since October 2007)" (R. at 15).  The ALJ reasoned that, due to this short treatment relationship, "it [could not] be said that the limitations set forth in [the] assessment [had] lasted, or [could] be expected to last, for 12 continuous months, provided the claimant complie[d] with treatment." Id. The Court acknowledges that the length of a treatment relationship is certainly relevant in weighing a medical opinion. 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[d] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion.").

However, no other source with a longer treatment relationship than Mr. Konopka was available to provide an assessment of Plaintiff's mental functioning. The record indicates that Plaintiff met with Dr. Babiak only once prior to the completion of the October 2008 assessment (R. at 402-07). However, Mr. Konopka met with Plaintiff several times between June 2007 and October 2007, and again in September 2008 (R. at 296-97, 302-03, 310-13, 380-89). The only remaining sources to provide opinions of Plaintiff's mental functioning were the Social Security Administration ("SSA") consultative examining psychologist, and the SSA non-examining review psychiatrist. The Court is troubled by the ALJ's failure to similarly discount these opinions for lack of a longitudinal treatment relationship. Thus, the fact that Plaintiff met with Mr. Konopka several times prior to the completion of the October 2008 assessment, and indeed more than any other source to provide an assessment of Plaintiff's mental functioning, should have weighed positively in Mr. Konopka's favor.

It is also unclear from the ALJ's decision why she found that Mr. Konkpa and Dr. Babiak's short treatment relationship with Plaintiff indicated that their limitations would not last for twelve months. The Court notes that the ALJ was free to question Mr. Konopka and Dr. Babiak concerning how long they believed their limitations would last by re-contacting either source. Indeed, an ALJ is obligated to re-contact a treating medical source when "the report . . . contain[ed] a conflict or ambiguity that must be resolved, [or] the report d[id] not contain all the necessary information." 20 C.F.R. § 404.1512(e)(1). Therefore, on remand, the ALJ should re-contact either Dr. Babiak or Mr. Konopka to question whether they anticipated Plaintiff's limitations, as outlined in their assessment, to last at least twelve months.

Finally, while the ALJ indicated that she ALJ relied heavily on the SSA consultative sources when forming the RFC,[7] she failed to separately weigh each medical opinion. This error provides a further basis for remand. See 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."); see also SSR 96-6p, 1996 WL 374180 at *2 (S.S.A.) ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Therefore, on remand, the ALJ must reevaluate the opinions from Dr. Babiak and Mr. Konpka, and consider whether Mr. Konpka's treatment history with Plaintiff bolsters the credibility of his findings. Moreover, the ALJ must separately weigh the state agency consultants' opinions and assign those opinions appropriate weight.

**c) The ALJ's Remaining Findings Throughout the Sequential Evaluation are Necessarily Flawed**

Plaintiff argues that the ALJ erred in several other respects throughout the sequential evaluation, including: improperly evaluating his mental impairments, finding Plaintiff's impairments did not meet a listing, evaluating Plaintiff's residual functional capacity, and finding that there was a significant number of positions in the national economy that Plaintiff could perform. Plaintiff's Brief, pp. 10-14, 17-21, 23-25.

[7] The ALJ stated that "[t]he State Agency assessments, [and] the opinions of the doctors who examined the claimant on a consultative basis, . . . all support a conclusion that he can meet the physical and mental demands of a wide range of light work" (R. at 16).

The Court has found, among other deficiencies, that the ALJ failed to properly analyze Plaintiff's credibility. Supra Part III.B.2.a. Thus, the ALJ's remaining findings throughout the sequential evaluation are necessarily flawed.

## IV. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly evaluate Plaintiff's credibility.

## V. Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: January 31, 2011

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: January 31, 2011